UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X  Docket No.:
STEPHEN PARRINO

                       Plaintiff,  **COMPLAINT**

          -against-

COUNTY OF NASSAU, NASSAU COUNTY      **JURY TRIAL**
POLICE DEPARTMENT, SGT. DARIN COSTELLO,    **DEMANDED**
P.O. PATRICIA ESPINOSA, P.O. ROBERT POLZER,
P.O. MATTHEW GROGAN and P.O. JOHN &
JANE DOE 1-10

                    Defendants.
------------------------------------------------------------------X

      Plaintiff, STEPHEN PARRINO, by and through his attorneys the LAW OFFICE OF JOHN T. SERIO, states as follows:

## JURISDICTION AND VENUE

1. This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, the Fourth, and Fourteenth Amendments to the United States Constitution, Due Process, and the Constitution and laws of the State of New York.

2. Jurisdiction is founded upon 28 U.S.C. §§ 1331, 1343, and 2202.

3. Plaintiff further invokes the supplemental jurisdiction of this Court to adjudicate pendant state law claims pursuant to 28 U.S.C. § 1367.

4. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b).

## PARTIES

5. Plaintiff, STEPHEN PARRINO ("Parrino"), is a resident of Nassau County.

6. Defendant COUNTY OF NASSAU ("Nassau County") is a county within the State of New York and the public employer of the Nassau County Police Department, Sergeant Darin Costello, Police Officer Patricia Espinosa, Police Officer Robert Polzer, PO Matthew Grogano and Nassau County Police Officers John and Jane Does 1-5 named as defendants in this action.

7. Defendant **NASSAU COUNTY POLICE DEPARTMENT** (hereinafter NCPD) is a County agency, organized under and existing and operating by virtue of the laws of the State of New York and the County of Nassau.

1

8. Defendant **SERGEANT DARIN COSTELLO** (hereinafter "Sgt. Costello was at all relevant times an employee of Defendants Nassau County and Nassau County Police Department, and at all relevant times acted under color of state law and within the scope of his employment and/or in his individual capacity. Sgt. Costello is being sued in his official and individual capacities.

9. Defendant **POLICE OFFICER PATRICIA ESPINOSA** (hereinafter "PO Espinosa") was at all relevant times an employee of Defendants Nassau County and Nassau County Police Department, and at all relevant times acted under color of state law and within the scope of her employment and/or in her individual capacity. PO Espinosa is being sued in her official and individual capacities.

10. Defendant **POLICE OFFICER MATTHEW GROGANO** (hereinafter "PO Grogano") was at all relevant times an employee of Defendants Nassau County and Nassau County Police Department, and at all relevant times acted under color of state law and within the scope of his employment and/or in his individual capacity. PO Grogano is being sued in his official and individual capacities.

11. Defendants **NASSAU COUNTY POLICE DEPARTMENT JOHN AND JANE DOES 1-5** ("John Doe[s]") include police officers, detectives, sergeants, and lieutenants, whether on or off duty, whose identities are not yet known to Plaintiff at this time but are known to Defendants Nassau County and Nassau County Police Department. Plaintiff intends to name the individual John and Jane Does after learning their identities. Defendants John Does were at all relevant times employees of Defendants Nassau County and Nassau County Police Department, and at all relevant times acted under color of state law and within the scope of their employment and/or in their individual capacity. Defendant John and Jane Does are being sued in their official and individual capacities.

## NOTICE OF CLAIM

12. On February 28, 2019, the Plaintiff filed a timely Notice of Claim against the County of Nassau (and NCPD, Sgt. Costello, PO Espinosa, PO Polzer and PO Matthew Grogano), in compliance with General Municipal Law § 50. *See* Exhibit A.

13. At least thirty days have elapsed since the service of said Notice of Claim and Nassau County and NCPD have neglected or refused to adjust or pay the claims.

14. On June 4, 2019, the Plaintiff was examined pursuant to GML § 50-h prior to commencing this action.

15. This action has been commenced within one year and ninety days after the happening of the events upon which these claims arise.

## FACTUAL AND GENERAL ALLEGATIONS

16. On December 1, 2018 at approximately 10:00 a.m., the plaintiff was at his home that he shared with his wife and son. .

17. At that date, time and place, the Plaintiff and his wife, Diane were involved in an argument concerning the overall status of their marriage. The argument was strictly verbal.

18. At some point during the argument, the Plaintiff disengaged from the discussion with his ex-wife and retreated to, first his bedroom, then the bathroom. While in the bathroom reaching to close the bathroom window, the plaintiff's ex-wife came from behind the plaintiff and threw a glass candle holder at the Plaintiff. The candle holder, although not striking the plaintiff directly, nonetheless struck the frame of the shower door causing the candle holder to break. As a result, a piece of the shattered glass struck the Plaintiff on the right side of his forehead causing a laceration to the Plaintiff's forehead. The injury caused the plaintiff to bleed.

19. Immediately thereafter, the Plaintiff's wife retreated to another portion of the home outside of the plaintiff's presence and view. It was at this time Mrs. Parrino made two 911 calls. According to her own supporting deposition she made the first 911 call "so he can stop fighting with me" and he was "making me scared." Again according to her own supporting deposition, the plaintiff's ex-wife made a second 911 call shortly after the first. During this call she informed the operator that she **HEARD** (emphasis added) glass breaking. She then asked the operator to stay on the line with her "because I was scared that my husband was going to say that I hit him." *See Exhibit B* – Written Statement of Diane Parrino.

20. Throughout this time frame, the Plaintiff remained separated from his ex-wife and was completely unaware that 911 calls were made.

21. Shortly after the 911 calls were placed, Police Officer's Patricia Espinosa, Robert Polzer and Matthew Grogan arrived at the scene. Upon their arrival, the Plaintiff immediately informed the officers that his wife struck him in the forehead with the candle holder causing him to suffer a cut to his forehead. Obviously, the Plaintiff displayed for the officers the cut upon his forehead which was still actively bleeding. It is believed that all three responding officers observed the injuries suffered by the Plaintiff. One of the officers called for medical assistance and an ambulance arrived in short time. The Plaintiff was asked if he wished to go to the hospital. He declined that invitation and was treated by EMT personnel.

22. During this general time frame the several defendant officers would alternately question the Plaintiff and the Plaintiff's ex-wife. These discussions with each participant occurred out of the presence of the other.

23. At some point, presumably due to the obvious injury sustained by the plaintiff, the officers asked if he wished to press charges against his now ex-wife. He responded by telling them no, especially in front of their young son.

24. Shortly thereafter, Sgt. Costello arrived at the scene. Upon information and belief, the responding officers informed Sgt. Costello of what they discovered during their questioning. For lack of a better term, Sgt. Costello took over and questioned the Plaintiff and his ex-wife. After explaining to Sgt. Costello what had actually happened, Sgt. Costello turned to the Plaintiff and accused him of breaking the glass and purposely using the shards to cut himself.

25. In the face of the plain physical evidence of the Plaintiff's injury, along with the Plaintiff's unwavering version of events, without probable cause to do so, Sgt. Costello directed the arrest of Stephen Parrino. "Hook him up" was the order.

26. At this point, the plaintiff was placed into handcuffs, in front of his son, and removed from his home and taken to the NCPD 5th precinct for processing. Several of the plaintiff's neighbors witnessed his arrest and placement into a Nassau County Police Department patrol car.

27. While at the 5th Precinct for the Nassau County Police Department (NCPD) the Plaintiff was booked and formally charged with Criminal Mischief in the 3rd Degree in violation of PL § 145.00, a class A misdemeanor under docket number 2018NA32059 for acts claimed to have occurred earlier that day at his home. It must be stressed that the property he is accused of damaging/breaking was the glass candle holder with a value of $5.00 dollars. *See Exhibit C - District Court Information.*

28. Further, the sworn statement upon which this arrest is based, was that of the Plaintiff's now ex-wife, which stated, where relevant, that she "Heard glass break." See Exhibit B. A necessary element of the crime charged is the accused's "specific intent" to damage the property of another. Even if one were to accept the complaining witness's version of events, there was absolutely no evidence to establish such intent. Even the complaining witness claimed only that she "heard" glass break.

29. The claimant was charged despite the fact that there was no probable cause or reasonable suspicion to believe that he committed this crime and in fact, there was obvious and apparent evidence to establish just the opposite, i.e. that the plaintiff was the victim of an assault and that his wife, the complaining witness in plaintiff's prosecution, was the individual responsible for his injuries. Under the circumstances, it was unreasonable and unlawful for the plaintiff to have been arrested.

30. After remaining in a 5th Precinct holding cell for approximately 5 hours, at approximately 5:00 pm on December 1st, the Plaintiff was transported to NCPD Headquarters where he was placed in a filthy, pungent, holding cell, remaining there for approximately 16 hours until the morning of December 2, when he was again transported to the First District Court for the County of Nassau, located in Hempstead, New York. Once there, the plaintiff was placed in another filthy, germ latent holding cell where he remained with a dozen or so other individuals before he was brought before a Judge for his arraignment.

31. The claimant was arraigned in Nassau County First District Court, after which the Plaintiff, at age 47, he was conditionally released to the Department of Probation. In addition, a temporary order of protection was issued on behalf of the claimant's wife. As a result, the claimant was removed from his home for nearly three months with no ability to return to his home in the foreseeable future. *See Exhibit D* – Temporary Order of Protection.

## PROCEDURAL HISTORY OF UNDERLYING PROSECUTION

32. After his arraignment the misdemeanor criminal charges took a typical pathway through the criminal process in the First District Court for Nassau County., i.e., several required court appearances which are scheduled for the purpose of conferencing amongst the prosecution, defense attorney and presiding judge.

33. After several appearances, the Plaintiff's retained defense counsel filed a motion seeking dismissal of the charge brought against Mr. Parrino. The basis for the motion was the legal insufficiency of the accusatory instrument, arguing the arresting officers lacked the requisite Probable Cause to support a legal arrest.

34. On April 3, 2019, after considering all legal arguments and the People's opposition thereto, the Honorable Joy M. Watson dismissed the charge brought against Mr. Parrino holding that "the sole pending charge of criminal Mischief in the Fourth Degree, brought pursuant to PL § 145.00(1) is hereby dismissed as facially insufficient (CPL 170.35(1)(a). See *Exhibit E* – Decision and Order of Judge Joy M. Watson.

35. Due to Defendants' actions, Mr. Parrino was unlawfully seized and searched, falsely arrested and charged with criminal activity, falsely imprisoned, maliciously prosecuted, and had his right to due process, right to liberty, right to counsel, and right to remain silent, amongst others, were violated.

36. Mr. Parrino suffered, and continues to suffer, from severe emotional distress and anxiety, humiliation, permanent damage to personal reputation, damage due to libel and slander, and physical pain and suffering.

37. Mr. Parrino also incurred monetary costs due to his false arrest and malicious prosecution including legal fees in the amount of thirteen thousand dollars ($3,000.00), additional housing cost in the approximate amount of $3,000.00 due to his court ordered removal from his home, additional clothing costs as he was deprived access to his home to gather some of his winter clothing and lost income in the approximate amount of $2,128.00 due to his mandatory attendance at all court proceedings.

38. Mr. Parrino's reputation is permanently damaged as neighbors and friends witnessed his very public arrest and custody bringing him great shame and humiliation..

5

## CAUSES OF ACTION

### ONE
### 42 U.S.C. § 1983 – False Arrest

39. Plaintiff repeats and realleges the allegations set forth in paragraphs 1-37 as though fully set forth herein.

40. Defendants intended to confine Mr. Parrino when they arrested him, removed him from his home, and transported him to the 5th Precinct of the NCPD, and then to a subsequent holding facility.

41. Mr. Parrino did not consent to the confinement, and was confined against his will.

42. Mr. Parrino was conscious of the confinement.

43. Defendants unlawfully confined Mr. Parrino because they did not have probable cause to believe he committed a crime, and their confinement of Mr. Parrino was without privilege or justification.

44. Defendants therefore falsely arrested Mr. Parrino in violation of the United States and New York State Constitutions and laws.

### TWO
### 42 U.S.C. § 1983 – False Imprisonment

45. Plaintiff repeats and realleges the allegations set forth in paragraphs 1-44 as though fully set forth herein.

46. Defendants intended to confine Mr. Parrino when they arrested him, removed him from his home, and transported him initially to the 5th Precinct, then to a subsequent holding facility located at the Headquarters for the Nassau County Police Department.

47. Mr. Parrino did not consent to the confinement, and was confined against his will.

48. Mr. Parrino was conscious of the confinement.

49. Defendants unlawfully confined Mr. Parrino because they did not have probable cause to believe he committed a crime, and their confinement of Mr. Parrino was without privilege or justification.

50. Defendants therefore falsely imprisoned Mr. Parrino in violation of the United States and New York State Constitutions and laws.

## THREE
## 42 U.S.C. § 1983 – Malicious Prosecution

51. Plaintiff repeats and realleges the allegations set forth in paragraphs 1-50 as though fully set forth herein.

52. Defendants initiated a criminal proceeding against Mr. Parrino when they arrested him and charged him with the crime of Criminal Mischief in the Fourth Degree in violation of New York Penal Law §145.00 a Class A Misdemeanor under docket number 2019NA032059.

53. Defendants initiated a criminal proceeding against Mr. Parrino despite the fact that no probable cause existed to believe Mr. Parrino committed the charged crimes.

54. Defendants acted with malice, particularly when confronted with Mr. Parrino's version of events in which he explained how it was he who was struck by a glass object thrown at him by his ex-wife coupled with the fact that he had injuries to his forehead which were plainly visible to the defendants and in fact, for which the defendants called for medical assistance for plainly visible injury to Mr. Parrino's forehead that supported his version of events.

55. The criminal proceedings against Parrino was terminated in his favor on April 3, 2019 when the only charge against him was dismissed.

56. Defendants therefore maliciously prosecuted Mr. Parrino in violation of the United States and New York State Constitutions and laws.

## FOUR
## Pendent State Claim – False Arrest

57. Plaintiff repeats and realleges the allegations set forth in paragraphs 1-56 as though fully set forth herein.

58. Defendants intended to confine Mr. Parrino when they arrested him, removed him from his home, and transported him first to the 5th Precinct, and then to a subsequent holding facility located at the Headquarters for the NCPD..

59. Mr. Parrino did not consent to the confinement, and was confined against his will.

60. Mr. Parrino was conscious of the confinement.

61. Defendants unlawfully confined Mr. Parrino because they did not have probable cause to believe he committed a crime, and their confinement was without privilege or justification.

62. Defendants therefore falsely arrested Mr. Parrino in violation of the United States and New York State Constitutions and laws.

## FIFTH
### Pendent State Claim – False Imprisonment

63. Plaintiff repeats and realleges the allegations set forth in paragraphs 1-61 as though fully set forth herein.

64. Defendants intended to confine Mr. Parrino when they arrested him, removed him from his home, and transported him first to the 5th Precinct, then to a subsequent holding facility located at the Headquarters for the NCPD.

65. Mr. Parrino did not consent to the confinement, and was confined against his will.

66. Mr. Parrino was conscious of the confinement.

67. Defendants unlawfully confined Mr. Parrino because they did not have probable cause to believe he committed a crime, and their confinement was without privilege or justification.

68. Defendants therefore falsely imprisoned Mr. Parrino in violation of the United States and New York State Constitutions and laws.

## SIXTH
### Pendent State Claim – Malicious Prosecution

69. Plaintiff repeats and realleges the allegations set forth in paragraphs 1-68 as though fully set forth herein.

70. Defendants initiated a criminal proceeding against Mr. Parrino when they arrested him and the crime of Criminal Mischief in the Fourth Degree in violation of New York Penal Law §145.00 a Class A Misdemeanor under docket number 2019NA032059.

71. Defendants initiated a criminal proceeding against Mr. Parrino despite the fact that no probable cause existed to believe Mr. Parrino committed the charged crime.

72. The defendants acted with malice when they chose to disregard the evidence readily available to them that supported Mr. Parrino's contention that it was he who was a victim of assault and that it was his ex-wife who damaged the property in question, yet it was the plaintiff Parrino who was arrested.

73. The criminal proceedings against Mr. Parrino was terminated in his favor on April 3, 2019, when all charges against her were dismissed.

74. Defendants therefore maliciously prosecuted Mr. Parrino in violation of the United States and New York State Constitutions and laws.

# EIGHT
## Pendent State Claim – Respondent superior/vicarious liability

75. Plaintiff repeats and realleges the allegations set forth in paragraphs 1-74 as though fully set forth herein.

76. Defendants Nassau County and Nassau County Police Department were at all relevant times the employers of Defendants Costello, Espinosa, Polzer and Grogano, as well as the additional police personnel whose conduct is at issue (whose identities are not yet know to Plaintiff but are known to Defendants Nassau County and Nassau County Police Department).

77. Defendants Costello, Espinosa, Polzer and Grogano and the additional Nassau County Police Department employees whose conduct is at issue, acted at all relevant times within the scope of their employment and under color of law.

78. Defendants Nassau County and Nassau County Police Department are therefore liable vicariously to Plaintiff for the tortious acts of Defendants Costello, Espinosa, Polzer and Grogano and the additional Nassau County Police Department employees whose conduct is at issue, under a theory of respondent superior.

**WHEREFORE**, Plaintiff requests the following relief jointly and severally as against all the defendants:

1. A trial by jury on all issues;

2. An award of compensatory damages in an amount to be determined at trial;

3. An award of punitive damages in an amount to be determined at trial;

4. Disbursements, costs, and attorneys' fees pursuant to 42 U.S.C. § 1988; and

5. Such other and further relief as this Court may deem just and proper.

Dated: Mineola, New York
February 24, 2020

Respectfully submitted,

The Law Office of John T. Serio
Attorneys for Plaintiffs
114 Old Country Road, Suite 420
Mineola, New York 11501
(516) 248-5317

By: _____
John T. Serio, Esq. (JTS-0007)